```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

Gillan Peabody[1]

   v.                           Civil No. 08-cv-371-JD
                                         Opinion No. 2009 DNH 058

Michael J. Astrue, Commissioner,
Social Security Administration

O R D E R

Gillan Peabody seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's decision denying her application for supplemental security income. Peabody contends that the Administrative Law Judge ("ALJ") erred in concluding that she did not meet a listed impairment, which resulted in a denial of her application. The Commissioner moves to affirm the decision.

Background

Gillan Peabody was born in September of 1996. She maintained an average weight during her first six months. From

---

[1] The claimant in this case is a minor whose mother filed an application on her behalf. The claimant is represented by counsel. The Commissioner refers to the claimant by her initials, "G.P.," although the claimant's counsel uses her full name. While counsel spells the claimant's first name as "Gillian," the administrative record indicates that her name is actually "Gillan." Therefore, the court will use the claimant's name, Gillan Peabody.

six months to nine months, however, Gillan did not grow, and she dropped to the 10th percentile for weight and the 10th to 25th percentile for height. She resumed a normal growth pattern after nine months. During the first year, she had some reflux symptoms, was not very interested in food, but was otherwise normal.

In April of 1998, when she was a year and a half, Gillan was seen by Dr. Ellen Elias at Children's Hospital in Boston. Her height was in the 25th percentile, and her weight was in the 25th to 50th percentile. Dr. Elias found that Gillan had Sprengel's deformity (abnormally high shoulder blade) with some scoliosis and chest wall asymmetry and that she appeared to have an immunological deficiency and mild symptoms of gastroesophageal reflux. Gillan was doing well developmentally. Dr. Elias noted that Gillan would be tested for chromosome 22 abnormality.

Dr. Elias saw Gillan again in July of 1999. Her height remained in the 10th percentile, and her weight remained in the 25th to 50th percentile. Her head circumference was in the 75th percentile. Dr. Elias noted that she was growing along her usual curve. Gillan continued to show Sprengel's deformity and mild asymmetry of the chest wall. She continued to do well developmentally. Gillan was diagnosed with Klippel-Geil syndrome (fusion of the cervical vertebrae) and mosaic Turner's syndrome

(absence of one X-chromosome in some cells).  Dr. Elias noted that Gillan would have surgery to correct Sprengel's deformity.

In June of 2000, Dr. Elias noted that Gillan's height was in the 10th to 25th percentile; her weight was in the 50th percentile, and her head size was at the 98th percentile. Developmentally, Gillan was making "nice progress" and would be starting preschool in the fall.  Gillan had some allergies and had colds during the winter.

A year later, in September of 2001, Gillan was seen in the Coordinated Care Service Clinic at Children's Hospital by Dr. Jane O'Brien.  Dr. O'Brien noted that Gillan was enrolled in a regular kindergarten program.  She was growing well with height and weight percentiles the same as previously noted.  She continued to have allergies.  In April of 2002, her height and weight maintained the same percentages, and she continued to do well developmentally.  Gillan continued to do well when seen by Dr. Fishman in April of 2003.

During this period, Gillan was followed in the Endocrine Program at Children's Hospital because of her Turner's Syndrome diagnosis.  Dr. Holm noted in October of 2003 that Gillan was seven years old; her height was in the 10th to 25th percentile and that she was growing well.  She was expected to attain five feet in height if she maintained the same growth pattern.  Her

examination findings were normal.  A year later, in October of 2004, Dr. O'Brien reported that Gillan remained in relatively good health, was continuing to grow normally without growth hormone, had normal cognitive development, and was doing well socially and academically in public school.

Dr. Holm reported in April of 2005 that Gillan continued to do well with normal skeletal maturation, normal thyroid function, and excellent growth.  In September of 2005, Gillan maintained a height between the 10th and 25th percentiles and weight in the 50th to 75th percentile, despite stress caused by the divorce of her parents.  Dr. O'Brien noted that Gillan's height and weight were in the same percentiles in October of 2005.  At a well-child visit in August of 2006, Gillan was maintaining the same height and weight percentiles; she had done well in fourth grade, and she was starting fifth grade soon.

Gillan's mother, Michelle Peabody, filed an application for Supplemental Security Income ("SSI") for Gillan in September of 2005.  Dr. Dorsey, a state agency reviewing physician, concluded in November of 2005 that Gillan's medical problems did not amount to a severe medical impairment.  After the SSI application was denied, Michelle requested a hearing before an ALJ, which was held on September 20, 2006.  Gillan and her mother, who were represented by counsel, testified at the hearing.

4

The ALJ issued a decision on February 23, 2007. The ALJ found that Gillan had severe impairments caused by her latex allergy and Turner's syndrome. He concluded, however, that her impairments did not meet or equal a listed impairment and that she was not disabled within the meaning of the Social Security Act. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

## Discussion

A child is entitled to SSI benefits if she is disabled under the Social Security Act, meaning that she has a "physical or mental impairment which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). A three-step inquiry is used to determine disability. 20 C.F.R. § 416.924(a); see also Giles ex rel Giles v. Astrue, 483 F.3d 483, 486 (7th Cir. 2007). At the third step, the child's impairments must meet or functionally or medically equal an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.926(d); Murphy v. Astrue, 496 F.3d 630, 633 (7th Cir. 2007).

Gillan contends that the ALJ's conclusion that she does not have an impairment or combination of impairments that meet or

equal a listed impairment was contrary to the information in the administrative record.  Specifically, Gillan argues that her treating physicians' opinions show that she met the Listings at 100.02, 109.02, and 109.13 in Appendix 1.[2]  The Commissioner responds that under the Social Security Administration's internal guidelines, the Program Operations Manual System ("POMS") at section DI 24598.020(3) clarifies the requirements of Listing 100.02 and precludes Gillan's claim.

    The court's review under § 405(g) is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  If the ALJ's factual findings are supported by substantial evidence in the record, they are conclusive, even if other evidence would support a contrary conclusion.  Id.; Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).

---

[2]Although Gillan, through counsel, states that the ALJ failed to consider evidence that she had a disorder of the spine that met Listing 1.04A, that Listing is not mentioned again, and the remainder of the memorandum focuses on Listing 100.02. Listing 1.04A, which requires evidence of nerve root compression, does not appear to apply to Gillan's impairments.

In his decision, the ALJ noted that Listing 109.13 applies to a child with Turner's Syndrome and requires evaluation under "the criteria for the appropriate body system."  The ALJ found that Gillan had a thyroid condition that has affected her height.  Pursuant to Listing 109.02B(2), which pertains to thyroid disorders affecting growth, the impairment is evaluated under Listing 100.02A or B.  The ALJ concluded that Gillan's impairments did not meet the requirements of Listing 100.02A or B because "[m]easurements [of Gillan's growth] have been consistent and have been well above the third percentile with no instance of sustained fall of 15 percentiles."

Listing 100.02A pertains to a growth impairment, related to an additional specific medically determinable impairment, and a "[f]all of greater than 15 percentiles in height which is sustained."  Gillan points out that between her sixth and ninth months her height fell from the 50th to 75th percentiles down to the 10th to 25th percentiles, a drop of more than fifteen percentiles.  Gillan also correctly states that although she began growing again, she never regained the loss in percentile points.

The Commissioner responds that although the ALJ did not cite to it, the decision is consistent with Social Security

Administration policy expressed in POMS DI 24598.020.[3] POMS are "publicly available operating instructions for processing Social Security claims," and "[w]hile these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect . . . ." Wash. Dep't of Soc. Servs. v. Keffeler, 537 U.S. 371, 385 (2003); accord James v. Richman, 547 F.3d 214, 218 n.2 (3d Cir. 2008). Courts defer to POMS provisions unless they are arbitrary, capricious, or contrary to existing law. Ramey v. Reinertson, 268 F.3d 955, 964 (10th Cir. 2001). Therefore, POMS are not given deference to the extent a POMS provision contradicts a Social Security regulation. See Fast v. Barnhart, 397 F.3d 468, 472 (7th Cir. 2005); McNamar v. Apfel, 172 F.3d 764, 766 (10th Cir. 1999).

The POMS provision cited by the Commissioner states:

> A fall in growth to, or persistence of growth below, the 3rd percentile **without a continuing reduction** in linear growth velocity does not meet the severity of Listing 100.02B because short stature, in and of itself, is not a medically determinable impairment.

---

[3] A question might arise as to whether the Commissioner's reliance on the POMS is an impermissible post hoc rationalization by counsel to support the ALJ's decision. See, e.g., Fed. Power Comm'n v. Texaco Inc., 417 U.S. 380, 397 (1974); Motor Veh. Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983); Warre, 439 F.3d at 1005, n.3; Dubois v. U.S. Dep't of Agric., 102 F.3d 1273, 1289 (1st Cir. 1996); Rebensdorf v. Astrue, 2009 WL 648892, at *5 (D. Ariz. March 11, 2009). Gillan, however, did not challenge the Commissioner's motion on that basis and, in fact, did not address the POMS at all.

> Even though the child will be short, he or she is now growing normally.  Likewise a child whose growth delay satisfies the criteria specified in Listings 100.02A or 100.03 but whose fall in growth is not also accompanied by a **continuing reduction** in growth velocity, does not meet the severity level of these listings.  A continuing reduction in growth velocity is established in accordance with the procedure in DI 24598.025B.

POMS DI 24598.020, ¶ 3 at 2.  As to Listing 100.02A, the Ninth Circuit concluded that it was ambiguous because a sustained fall in percentiles could mean either that the reduced height continued or that the percentiles continued to fall.  Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1005 (9th Cir. 2006).  The court interpreted "sustained" to mean that the child continued to lose percentiles in height.  Id.  That interpretation was based on the contrast in language used in Listing 100.02B, which explicitly provided for a "persistence of, height below the third percentile," not included in Listing 100.02A and on the POMS DI 24598.020 interpretation of Listing 100.02A.  Id.

The provision in POMS DI 24598.020 supports the ALJ's decision that Listing 100.02A requires a continued or sustained loss in growth percentiles.  In Warre, the Ninth Circuit determined that Listing 100.02A was entitled to deference as persuasive authority.  Id.  Gillan has not argued to the contrary.  Therefore, the ALJ's decision, based on a determination that Gillan did not meet Listing 100.02A because

she did not have a sustained reduction in height of fifteen or more percentiles is affirmed.

## Conclusion

For the foregoing reasons, the motion to reverse the decision of the Commissioner (document no. 7) is denied.  The motion to affirm (document no. 9) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

April 23, 2009

cc:  T. David Plourde, Esquire
     Christopher G. Roundy, Esquire